UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| WILBER GLENN HOLLAND,<br><br>  Plaintiff,<br><br>v.<br><br>STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,<br><br>  Defendant. | Case No. 2:12-cv-01058-LDG-GWF<br><br><br><br>ORDER |

  This matter comes before the court on defendant's renewed motion for summary judgment (#46, errata #49, plaintiff's supplement #50). As indicated by defendant's renewed motion and plaintiff's supplement, incorporated by reference is the prior briefing on defendant's original summary judgment motion (#12, response #14, reply #16).

  A grant of summary judgment is appropriate only where the moving party has demonstrated through "the pleadings, the discovery and disclosure materials on file, and any affidavits" that there is no genuine issue of material fact. Fed. R. Civ. P. 56©; Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). All justifiable inferences must be viewed in the light most favorable to the non-moving party. County of Tuolumne v. Sonora Cmty. Hosp., 236 F.3d 1148, 1154 (9th Cir. 2001).

  The moving party bears the initial burden of showing the absence of a genuine issue of material fact. Fairbank v. Wunderman Cato Johnson, 212 F.3d 528, 531 (9th Cir. 2000). The burden then shifts to the non-moving party to go beyond the pleadings and set forth specific facts demonstrating there is a genuine issue for trial. Id. The party opposing summary judgment "must

cite to the record in support of the allegations made in the pleadings to demonstrate that a genuine controversy requiring adjudication by a trier of fact exists." <u>Taybron v. City & County of San Francisco</u>, 341 F.3d 957, 960 (9th Cir. 2003). If the non-moving party meets its burden, summary judgment must be denied. Fed. R. Civ. P. 56( c). <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324 (1986).

<u>Background</u>

This lawsuit arises out of an automobile accident that occurred in Clark County, Nevada, on November 26, 2010. Michael Long rear-ended plaintiff Wilber G. Holland, who had stopped at an intersection. At the time of the accident, Long was insured with a bodily injury liability policy that provided liability limits of $15,000 per person. Holland had underinsured motorist ("UIM") coverage under an automobile policy issued by defendant State Farm Mutual Automobile Insurance Company which provided limits of $100,000 per person.

State Farm was first notified of Holland's UIM clam on July 26, 2011, eight months after the accident. That day, State Farm also received a letter from William Birardi, Holland's attorney, enclosing a restricted/limited medical records release authorization that permitted State Farm to obtain Holland's medical records from providers specified in the authorization, and regarding treatment occurring only after the accident. Birardi's letter directed that State Farm must request additional restricted/limited authorizations from him for any new providers Holland would potentially see after the accident.

On July 28, 2011, State Farm sent a letter to Birardi confirming the UIM coverage and including a separate letter to Holland which explained Holland's obligations under the policy to provide executed medical records authorizations as requested by State Farm. State Farm also enclosed within its letter to Holland a medical authorization from Holland to sign and return. On that day, State Farm requested medical records from the providers listed by Holland in his July 26, 2011 letter. Holland settled with Long on November 4, 2011, for $15,000.

On April 11, 2012, State Farm contacted Birardi's office and left a voicemail, requesting among other things, the status of the medical authorization, medical questionnaire, and medical provider lists that State Farm had initially requested.  On April 12, 2012, Birardi faxed to State Farm the medical provider questionnaire with several of Holland's medical providers listed, a partially completed injury questionnaire, and another restricted/limited medical records authorization allowing State Farm to obtain only Holland's medical records after the accident from certain medical providers.

On April 24, 2012, Birardi submitted a time limit demand for Holland's $100,000 UIM policy limits.  The letter also noted that one doctor recommended cervical reconstruction surgery for Holland, and that a second opinion would be sought.  State Farm reviewed the claim on May 8, 2012, and determined that it needed to obtain further information, including the second opinion regarding the cervical surgery before completing the evaluation of Holland's claim.  On May 10, 2012, a section manager at State Farm evaluated the claim and noted that the accident photos supported a low-impact collision, and that Holland had delayed two weeks before seeking treatment for a possible cervical injury.  The section manager suggested obtaining an IME before considering claims for treatment beyond chiropractic.

Also on May 10, 2012, State Farm left a message with Birardi's paralegal advising that State Farm would be sending additional medical authorizations for Holland's signature and a new provider list.  State Farm sent a letter to Birardi, informing him that, at that time, it would not agree to the demand as it required additional information.  The letter enclosed the medical authorization and provider list, which would allow State Farm to collect records and bills from all of Holland's providers for the past five years, as well as from all of Holland's providers who had ever seen him for neck and back-related injuries.

Birardi responded by sending another demand letter for policy limits, giving State Farm one day to respond, and stating that his client would file suit if the demand were not accepted.

3

1  This demand letter, for the first time, confirmed that Holland did have "some" lower back pain in
2  August 2009, prior to the accident.  However, Birardi insisted that Holland's current symptoms
3  were due entirely to the auto accident.  State Farm replied by letter the next day indicating that it
4  still required signed medical authorizations and provider list before it could fully evaluate
5  Holland's claim.

6  Holland filed suit against State Farm on May 16, 2012, for breach of contract and bad
7  faith.  On May 18, 2012, Birardi sent a letter to State Farm stating that Holland would not sign
8  such "carte blanche" authorizations, and that Holland had not received any prior treatment for
9  neck or back issues.  In discovery, however, Holland described that he "primarily injured [his]
10 back and neck as a result of the accident."  Holland also revealed that, with respect to any back or
11 neck injury prior to the accident, he had made complaints of pain or discomfort to the doctors and
12 medical personnel at a medical provider in San Diego and the Veterans Administration Hospital.
13 Further, in response to State Farm's discovery, Holland admitted that he made a claim for
14 disability benefits with the Social Security Administration and Navy which was "primarily due to
15 my neuropathy and vascular/heart conditions."  Finally, in supplemental discovery disclosures,
16 Holland's medical records indicated that he suffered from a pre-existing chronic neck and back
17 condition dating back to December of 2007, and had received treatment for such on a host of
18 occasions.  Prior to the initiation of the lawsuit, Holland had not provided State Farm with any of
19 these medical records, nor had Holland executed the medical records authorization which would
20 have allowed State Farm to obtain the records.

21 Discussion

22 In its motion for summary judgment, State Farm asserts that, in violation of the terms of
23 the law and the terms of the policy, Holland refused to provide medical authorizations to enable
24 State Farm to investigate and evaluate Holland's pre-existing medical history in order to determine
25 whether his claimed injuries were attributable to the car accident.  Furthermore, State Farm argues
26

4

that for Holland to file suit before complying with the policy conditions, also violated the policy's terms. Such breaches, according to State Farm, release it from any obligations under the policy.

The UIM portion of the subject policy dealing with cooperation provides, in relevant part, with :

> INSURED'S DUTIES
>
> . . .
>
> 3.  Insured's Duty to Cooperate with Us
>
>     a.  The <u>insured</u> must cooperate with us and, when asked, assist us in:
>
>         . . .
>
>         (2)  securing and giving evidence;
>
>         . . .
>
> 6.  Other Duties Under . . . Uninsured Motor Vehicle Coverage. . . .
>
>     A <u>person</u> making claim under:
>
>     a.  . . . Uninsured Motor Vehicle Coverage . . . must:
>
>         (1)  notify <u>us</u> of the claim and give us all the details about the death, injury, treatment, and other information that we may need as soon as reasonably possible after the injured <u>insured</u> is first examined or treated for the injury.
>
>         . . .
>
>         (3)  provide written authorization for us to obtain:
>
>              (a)  medical bills;
>              (b)  medical records;
>
>              . . .  [and]
>
>              (d)  any other information we deem necessary to substantiate the claim.
>
>         . . .
>
>     If the holder of the information refuses to provide it to us despite the authorization, then at our request the person making claim or his or her legal representative must obtain the information and promptly provide it to <u>us</u>.

5

The policy also precludes the insured from bringing legal action against State Farm if the insured fails to comply with the conditions of the Policy:

GENERAL TERMS

. . .

13. Legal Action Against Us

Legal action may not be brought against, nor may arbitration be demanded of, us until there has been full compliance with the provisions of this policy. In addition, legal action may only be brought against, or arbitration may be demanded of, us regarding:

. . .

c. Uninsured Motor Vehicle Coverage if the insured or that insured's legal representative:

1. presents either an Uninsured Motor Vehicle Coverage claim to us; and

2. files a lawsuit or demands nonbinding arbitration in accordance with the Deciding Fault and Amount provision of the involved coverage.

Except as provided in c.(2) above, no other legal action may be brought against, nor any arbitration be demanded of, us as relating to Uninsured Motor Vehicle Coverage for any other causes of action that arise out of or are related to these coverages until there has been full compliance with the provisions titled Consent to Settlement and Deciding Fault and Amount.

In Nevada, "contracts will be construed from the written language and enforced as written." Ellison v. California State Auto., Ass'n, 106 Nev. 601, 604, 797 P.2d 975, 977 (Nev. 1990). "Policy terms should be viewed in their plain, ordinary and popular connotations." Id. at 603. A court "should not rewrite contract provisions that are otherwise unambiguous." Fed. Ins. Co. v. American Hardware Mut. Ins. Com., 124 Nev. 319, 322, 184 P.3d 390, 392 (Nev. 2008). "Nevada law clearly enforces coverage conditions, and precludes coverage irrespective of whether there is any prejudice to the carrier." Schwartz v. State Farm Mutual Auto. Ins. Co., No. 2:07-cv-0060-KJD-LRL, 2009 WL 2197370, at 7 (D. Nev. July 23, 2009) (citations omitted). "When an

6

insurance policy explicitly makes compliance with a term in the policy a condition precedent to coverage, the insured has the burden of establishing that [he or she] complied with that term." Id.

The crux of Holland's argument regarding the cooperation clause, is that the policy requires only an authorization for release of medical records, bills or other specific information State Farm deems necessary, and that State Farm's form release authorization was general and unqualified in that it requested not only the identification of medical providers related to the accident, but also all medical providers prior to the accident. Accordingly, Holland argues, he rightly refused to furnish the information sought by the form release authorization.

The record indicates that, indeed, State Farm did not request a release authorization for only specific records or information. Rather, State Farm's form release authorization allowed State Farm to secure the information specified in the cooperation clause of the policy: medical records, bills and other information they deemed necessary to evaluate the claim. The plain, ordinary, and popular connotation of the language of the policy requires a "written authorization" to obtain the information, and to read into the clause the requirement that any such authorization include only specifically identified medical records, bills, or information, is unsustainable. Such a restriction would result in State Farm's inability to fully evaluate not only an insured's condition after an injury, but also any pre-condition before an event. The specificity which Holland maintains is only required under the policy is, in fact, a subset of the authorization required by the policy, and any other reading would be a rewrite of the policy's terms.

Holland points to Barrera v. Western United Insurance Co., No. 2:09-cv-02289-ECR-PAL, 2012 WL 359748 (D. Nev. Feb. 2. 2012), in which the court denied summary judgment even though plaintiff had not provided a medical authorization for all of her medical records. In that case, the court was not faced with the issue of whether the policy required cooperation when only specifically identified information was requested. Rather, in Barrera, the court determined that, given the circumstances, the remedy for plaintiff's non-compliance was overly harsh. Even then,

7

the court admitted that under the insurance contract scheme in Nevada, the facts presented a close case, and cautioned that "as a general rule, policyholders are required to comply with the terms of the insurance policy in order to reap the benefits of the contract." Id. at 5, n. 2.

This case is not so close. Holland refused to provide the complete information although repeatedly requested. This decision was a calculated one, even though the information was clearly relevant to State Farm's evaluation of the injuries sustained in the accident and any pre-existing related problems. Furthermore, the court finds that, while questionably not required under Nevada law, State Farm has shown that it suffered prejudice as a result of Holland's failure to supply the requested information. Holland's refusal precluded State Farm from completing its coverage determination and otherwise fulfill its duties to investigate the claim. State Farm ultimately obtained the information from Holland through discovery, but not until after incurring unnecessary costs associated with the litigation, and a delay in the determination of the validity of the claim and possible resolution.

Finally, the policy precludes an insured from bringing legal action or demanding arbitration until the insured had fully complied with any obligations under the contract. Under Nevada law, such provisions are valid. See Keys v. State Farm Mutual Auto. Ins. Co., No. 2:12-CV-1181 JCM (PAL), 2013 WL 3198397, at 4 (D. Nev. June 21, 2013) (citing Las Vegas Star Taxi, Inc. v. St. Paul Fire & Marine Ins. Co., 102 Nev. 11, 12, 714 P.2d 562, 562-63 (Nev. 1986)). The fact that Holland initiated this lawsuit against State Farm before complying with the cooperation provisions bars this lawsuit, and his attempts during litigation to comply does not cure the defect. See Schwartz, 2009 WL 2197370, at 7 (plaintiff precluded from recovering "even though Plaintiff subsequently underwent the IME, her failure to submit to an IME when initially requested still qualified as a violation of coverage in light of the 'Suit Against Us Provision.'").

/ / /

/ / /

Conclusion

Accordingly,

THE COURT HEREBY ORDERS that defendant's motion for summary judgment (#46) is GRANTED.

THE COURT FURTHER ORDERS that defendant's first motion for leave to file surreply or, in the alternative, notice of recent authority (#44) is DENIED as moot.

DATED this 26 day of March, 2014.

_____
Lloyd D. George
United States District Judge